```
F I L E D
APR  8 2014
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA
```

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case Number: 1:14-MJ-178 |
| | ) | |
| UDAYA KUMAR KEELAKATTU | ) | |
| a/k/a "Udayakumar Radhakrishnan | ) | |
| Keelakattu" | ) | |
| | ) | |

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

### Agent Background and Introduction

I, Tai N. Pham having been duly sworn, hereby depose and say:

1.      I am a Special Agent with the U.S. Department of State, Diplomatic Security Service ("DS"). I am the DS agent assigned to U.S. Department of Homeland Security, Homeland Security Investigations ("HSI"), Document and Benefit Fraud Task Force ("DBFTF"), Washington, D.C. I am a graduate of the Federal Law Enforcement Training Center, Criminal Investigator Training Program and received additional training at DS Training Center. I have a bachelor's degree from the Pennsylvania State University. As a Special Agent, I conduct official criminal investigations into immigration fraud involving travel documents, such as U.S. visas and passports.

2.      This affidavit is submitted in support of a criminal complaint and an arrest warrant for UDAYA KUMAR KEELAKATTU ("KEELAKATTU"), former president of LING TECHNOLOGIES, INC., ("LING") for violations of Title 18, United States Code, Sections 1546 (Fraud and misuse of visas, permits and other documents) and, Section 371 (Conspiracy). Specifically, I submit that there is probable cause to believe that KEELAKATTU—in his role as

1

President of LING, an information technology ("IT") consulting company located at the times most relevant to this complaint in Manassas, Virginia, within the Eastern District of Virginia—conspired with others to commit visa fraud by bringing aliens into the country, purportedly to work for LING, on fraudulent work visas.

3.      I make the following statements based on information obtained through personal observation, statements of witnesses, information supplied to me by other law enforcement officers, and information obtained through the use of law enforcement computerized database.

4.      This affidavit contains information necessary to support probable cause for this criminal complaint and arrest warrant.  This affidavit is not intended to include each and every fact and matter observed by me or known by the government.

### Background Information On The H-1B Temporary Specialty Occupation Workers Program—The Process of Seeking Temporary Employment of Aliens in the United States

5.      An employer seeking temporary lawful immigration status for an alien to work in the United States uses a process involving three steps and three government entities, including: the United States Department of Labor ("DOL"), Employment and Training Administration ("ETA"); the U.S. Department of Homeland Security ("DHS"), U.S. Citizenship and Immigration Services ("USCIS"); and the Department of State ("DOS").

6.      Under United States laws and regulations, individuals who are not United States citizens, commonly referred as aliens, are not permitted to lawfully work in the United States unless they have been granted permission by the United States government.  Certain aliens can obtain a nonimmigrant visa from DOS to apply for admission into the United States or to lawfully remain in the United States.  A visa is a document issued by a consular representative of the United States that permits the bearer to apply for admission to enter the United States.  A

2

nonimmigrant visa ("NIV") is a visa that is issued for temporary entry into the United States; these types of visas are issued in various classifications. One type of NIV is issued to temporary specialty occupation workers, known as an H-1B NIV.

*Step One: The submission of a Labor Condition Application to DOL for certification:*

7.      An employer is required to file a Labor Condition Application ("LCA") for Nonimmigrant Workers (Form ETA-9035) with DOL. The ETA-9035 sets forth, among other items, the name of the employer, location of the job, the job title, and the rate of pay at the prevailing wage[1] for that specific job in a specific geographic area in the United States. Once the ETA-9035 is certified by DOL, the employer receives a certification letter.

*Step Two: The filing of an I-129 petition with DHS/USCIS for an H-1B visa:*

8.      Upon receipt of the certification letter, the employer files a Petition for Nonimmigrant Worker (Form I-129) to USCIS. The employer must include with the I-129 an employment offer letter that contains detailed descriptions of the alien's qualifications and the specific requirements of the job for which the alien is being hired to perform. The DOL-approved certification letter is required to be submitted with the I-129 to USCIS.

9.      If the I-129 is approved, USCIS issues a Form I-797 (Notice of Action) informing the employer that the worker is granted status for the authorized period, based on the approved petition.

---

1 The Immigration and Nationality Act requires that the hiring of a foreign worker not adversely affect the wages and working conditions of comparably employed U.S. workers. Because of this requirement, DOL regulations require that the wages offered to a foreign worker must be the prevailing wage rate for the occupational classification in the area of employment. The prevailing wage rate is defined as the average wage paid to similarly-employed workers in the specific occupation in the area of intended employment

*Step Three: Applying for an H-1B nonimmigrant visa:*

10.     Once USCIS issues the I-797, the alien can then apply for an H-1B visa at a U.S. Embassy or Consulate abroad by submitting an online Nonimmigrant Visa Application (Form DS-160).[2]  If approved by a Consular representative, the H-1B visa can be issued to the alien. Under H-1B visa status, the alien is permitted to work only for the employer who signed the I-129. An alien who works elsewhere violates the conditions of the H-1B. An alien who works in a different job also violates the conditions of the H-1B. An employer violates the conditions of the H-1B, not only by assisting an alien in violating these conditions, but also by not paying an alien employee the prevailing wage, among other ways.

11.     The employer may apply on behalf of the alien workers for renewal of the H-1B visas by repeating the steps described in paragraph 6, 7 and 8. The employer is required again to file Form ETA-9035 to DOL.  If approved, DOL issues a labor certification letter to be submitted with Form I-129 to USCIS.  If that application is approved, USCIS issues an I-797 approval notice to the employer. The H-1B nonimmigrant visa status permits aliens to work in the United States for three years, with the possibility of an additional three-year extension, for a maximum period of six years.

## Background Information related to the Process of Seeking Permanent Employment for Aliens in the United States

12.     A sponsoring employer is required to file an Application for Permanent Employment Certification (ETA-9089) when the employer seeks to hire an alien for permanent work in the United States.  The ETA-9089 sets forth the name of the employer, the location of the job, the job title, and the rate of pay at the prevailing wage for that specific job in a specific

---

2 This Form was formerly called the DS-156, which is the standard paper form.

geographic area in the United States, among other items. The employer also must affirm that no qualified United States workers are available or willing to do the job that the alien will perform for the employer.

13.     Once the ETA-9089 is approved and certified by DOL, the employer may file an Immigrant Petition for Alien Worker (Form I-140) with USCIS on behalf of the alien. An approved I-140 permits an alien to apply for lawful permanent residence status in the United States, also known as a green card, via Application to Register Permanent Residence or Adjust Status (Form I-485).

## Statement of Probable Cause

14.     On or about December 2, 2005, a Form ETA-9035 (Labor Condition Application) was submitted by KEELAKATTU, president of LING, to DOL requesting certification for temporary employment of MUKESH KUMAR ("KUMAR") as an H-1B worker for the position of Programmer Analyst. The ETA-9035 application contained a signature purporting to be that of KEELAKATTU, the president of LING. By signing the application, KEELAKATTU certified that the ETA-9035 application was true and accurate, under penalty of perjury.

15.     On or about December 13, 2005, KEELAKATTU through LING submitted an I-129 petition to USCIS. This I-129 said that LING would employ KUMAR, on an H-1B visa, for a temporary job as a Programmer Analyst to work in Vienna, Virginia, within the Eastern District of Virginia. The I-129 petition contained a signature purporting to be that of KEELAKATTU in his capacity as the president of LING. By signing the I-129, KEELAKATTU certified, under penalty of perjury, that the petition and the evidence submitted with it are all true and correct. Relying on the veracity of the statements contained in this I-129,

5

USCIS approved the I-129 petition on or about December 16, 2005.

16.     On or about August 28, 2007, KEELAKATTU through LING submitted an ETA-9089 (Application for Permanent Employment Certification) application to DOL requesting permanent employment certification for KUMAR for the position of "Software Developer (Functional Title: Programmer/Applications Analyst)." The ETA-9089 application contained signatures purporting to be those of KUMAR and KEELAKATTU. Both KUMAR and KEELAKATTU signed the application under penalty of perjury.

17.     On or about October 15, 2007, KEELAKATTU through LING submitted an I-140 (Immigrant Petition for Alien Worker) petition to USCIS. KEELAKATTU affirmed in the I-140 that LING would employ KUMAR as a Software Developer, to design, develop, test and implement software applications, in Herndon, Virginia, within the Eastern District of Virginia. The I-140 petition contained a signature purporting to be that of KEELAKATTU, in his capacity as the president of LING. By signing the I-129, KEELAKATTU certified, under penalty of perjury, that the petition and the evidence submitted with it were all true and correct. Relying on the veracity of statements contained on the I-140 petition, USCIS approved the I-140 petition on or about April 14, 2010.[3] While the I-140 petition was pending, since its denial was being appealed, KEELAKATTU through LING continued to file additional paperwork with the U.S. government.

18.     On or about September 25, 2008, an ETA-9035 application was submitted by KEELAKATTU through LING to DOL requesting certification for temporary employment of

---

[3] The I-140 petition was originally denied based on a dispute over whether KUMAR had the requisite qualifications for the listed position. After a Notice of Appeal or Motion application (I-290B) to reconsider adverse action, in which Ling challenged the determination of USCIS and submitted additional evidence of KUMAR's qualifications, USCIS approved the petition.

6

KUMAR as an H-1B worker for the position of Programmer Analyst. On the ETA-9035 application, it contained a signature purporting to be that of KEELAKATTU, in his capacity as the president of LING. By signing the application, KEELAKATTU certified that the ETA-9035 application was true and accurate.

19.     On or about September 29, 2008, KEELAKATTU through LING  submitted an I-129 petition. This I-129 said that LING would employ KUMAR on an H-1B visa for a temporary job as a Programmer Analyst to work in Manassas, Virginia, within the Eastern District of Virginia. The I-129 petition contained a signature purporting to be that of KEELAKATTU, in his capacity as the president of LING. By signing the I-129, KEELAKATTU certified, under penalty of perjury, that the petition and the evidence submitted with it were all true and correct. Relying on the veracity of statements contained in the I-129 petition, USCIS approved the I-129 petition on or about December 31, 2008.

20.     On or about January 4, 2012, LING filed objections and responses to a set of interrogatories in a civil action in which LING was a defendant. This filing was signed by KEELAKATTU, under penalty of perjury, in his capacity as the president of LING. In this filing, in response to "Interrogatory No. 1," which asked for the names and position descriptions for all LING employees, LING named KUMAR as its "Senior Recruiter" and described him, in this capacity, as being "[r]esponsible for the hiring, marketing, and managing day-to-day responsibilities of other employees (December 21, 2005 to May 31, 2010)." Objections and Responses to Plaintiff's First Set of Interrogatories and Request for Production of Documents to Defendant Ling Technologies, Inc., No. 1:11cv844, at 5 (January 5, 2012). This declaration, made under penalty of perjury, is contrary to the visa application filings, also made under penalty

of perjury, described above.

21.     On or about October 31, 2013, federal agents interviewed Witness 1, formerly an H-1B worker and employee of LING. DOL certified the ETA-9035 filed by LING on behalf of Witness 1 on or about September 25, 2008. On the ETA-9035, LING listed that Witness 1 would be paid approximately $50,000. On or about October 2, 2008, LING filed an I-129 on behalf of Witness 1 and listed that Witness 1 would be paid approximately $55,000. These forms were purportedly signed by KEELAKATTU under penalty of perjury, in his capacity as the president of LING. Relying on the veracity of statements contained in the I-129 petition, the I-129 was approved by USCIS on or about November 3, 2008.

22.     Witness 1 stated that LING actually only paid him $20,000 for one year of employment in 2008 and 2009 and that he was only able to keep approximately ten percent (10%) of this $20,000. This was contrary to the terms of the labor certification and I-129 petition that LING had previously submitted to DOL and USCIS, in which LING promised to pay Witness 1 an annual salary of $55,000.

23.     On or about November 12, 2013, federal agents interviewed Witness 2, formerly an H-1B worker and employee of LING. DOL certified the ETA-9035 filed by LING on or about July 9, 2008. On the ETA-9035, LING listed that Witness 2 would fill the job title of a Programmer Analyst and be paid approximately $55,000. On or about July 11, 2008, LING filed an I-129 on behalf of Witness 2 and listed that Witness 2 would fill the job title of a Programmer Analyst and be paid approximately $55,000. These forms were purportedly signed by KEELAKATTU under penalty of perjury, in his capacity as the president of LING. Relying on the veracity of statements contained in the I-129 petition, the I-129 was approved by USCIS on

or about December 4, 2008.

24.     Witness 2 stated that LING petitioned for her as a Programmer Analyst with LING with annual salary of $55,000. Upon arrival to the United States, Witness 2 reported to work to LING. Upon reporting to work for her first day at LING, Witness 2 stated that KEELAKATTU and KUMAR told her that there was no job or position for her at LING, contrary to the position listed on her H-1B labor certification and I-129 petition submitted to DOL and USCIS. Witness 2 stated she had to find her own job and that LING then received thirty percent of her salary from this job that she found on her own (while she kept the other seventy percent). Witness 2 was under the "employment" of LING for approximately two years, from mid-2008 through late 2010, and LING kept approximately $33,000 of her salary during that duration.

25.     Witness 2 also explained that most of her contacts regarding her employment were with KUMAR. When asked to describe what KUMAR's position at LING was, Witness 2 described him as being the "human resources manager," contrary to the software analyst position listed on his visa application documents.

26.     Based on the information provided in this affidavit, there is probable cause to believe that KEELAKATTU violated Title 18, United States Code, Sections 1546(a) and 371 in that KEELAKATTU willfully and knowingly made false statements in the ETA-9035 and ETA-9089 applications to DOL and the I-129 and I-140 petitions to DHS by listing jobs that did not exist and salaries that were not paid.

27.    Wherefore, pursuant to Rule 4 of Federal Rules of Criminal Procedure, I

respectfully request a criminal complaint and arrest warrant for KEELAKATTU.

Special Agent Tai N. Pham

SUBSCRIBED AND SWORN TO
BEFORE ME THIS ⅛ th DAY
OF April 2014

                /s/
         Ivan D. Davis
   United States Magistrate Judge

10